# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| B. RILEY WEALTH MANAGEMENT, INC. f/k/a WUNDERLICH SECURITIES, INC., ) ) ) Plaintiff, ) ) vs. ) ) XL SPECIALTY INSURANCE COMPANY, ) ) Defendant. ) | Civil Action No. _____ Jury Trial Demanded |

## COMPLAINT

Plaintiff B. Riley Wealth Management, Inc., formerly known as Wunderlich Securities, Inc. ("WSI" or the "Insured"), by and through its undersigned attorneys, complains against Defendant XL Specialty Insurance Company ("XL Specialty") as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action involving the wrongful refusal of XL Specialty to honor its contractual obligations to indemnify the Insured for its liability and defense costs arising from certain underlying claims covered by a directors and officers liability ("D&O") policy that XL Specialty issued to WSI. As a result of XL Specialty's wrongful refusal to provide the coverage it promised, the Insured has been forced to bring this action.

2. The underlying claims at issue in this action arise from a corporate transaction (the "Transaction") in which WSI agreed to purchase the private wealth management business of Dominick & Dickerman LLC ("Dominick"). Pursuant to a binding arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA") Office of Dispute Resolution (the "Arbitration"), Dominick and Michael Campbell, an officer of Dominick ("Campbell," and

collectively with Dominick, the "Underlying Claimants"), asserted that the Insured and Gary K. Wunderlich Jr. ("Wunderlich")—a director and the Chief Executive Officer of the Insured at all times relevant to the underlying claims in the Arbitration—had engaged in certain allegedly wrongful conduct in connection with the Transaction that caused them to suffer monetary damages (the "Dominick Claims").

3. Although the Insured and Wunderlich defended the Dominick Claims vigorously in the Arbitration, FINRA nevertheless awarded in excess of $11 million in compensatory damages and other relief to the Underlying Claimants pursuant to an April 6, 2020 Award (the "Arbitration Award"). The Arbitration Award ultimately resulted in a settlement agreement (the "Settlement Agreement"), in which the Insured was forced to pay to Dominick $10,150,000 (the "Settlement Payment") reflecting amounts awarded in the Arbitration Award. Copies of the Arbitration Award and Settlement Agreement are attached hereto at **Exhibits A** and **B**, respectively.

4. XL Specialty issued a Financial Services Liability Policy, no. ELU149166-17, to WSI that provided, among other things, D&O liability coverage to the Insured (the "XL Specialty Policy"). The XL Specialty Policy replaced another D&O liability policy—Director and Officer and Corporate Securities Liability Insurance Policy, no. DOP-676536-0714—issued by Catlin Specialty Insurance Company ("Catlin") to WSI's parent company, which also provided D&O liability coverage to the Insured (the "Catlin Policy"). With respect to claims submitted under the XL Specialty Policy, the policy's Liberalization Policy Endorsement ("Liberalization Endorsement," attached as Endorsement No. 2 to the XL Specialty Policy) provides that the Insured is entitled to avail itself of the terms of either the XL Specialty Policy or the Catlin Policy, whichever are "more favorable to the Insured." Copies of the XL Specialty Policy and the Catlin Policy (collectively, the "Policies") are attached hereto at **Exhibits C** and **D**, respectively.

5. The terms of both Policies clearly provide coverage for, among other things, the damages and other relief awarded in the Arbitration Award (as reflected in the Settlement Payment), as well as the Insured's considerable costs of defending the Dominick Claims ("Defense Costs," and collectively with the Settlement Payment, the "Covered Costs").  Nevertheless, XL Specialty has disclaimed any obligation to indemnify the Insured for the Covered Costs under the terms of the XL Specialty Policy.

6. Likewise, notwithstanding that XL Specialty acknowledges that the Insured is entitled to the more favorable of the terms of the Policies, XL Specialty has not acknowledged any obligation to indemnify the Insured for the Covered Costs under the terms of the Catlin Policy. XL Specialty's refusal or failure to acknowledge its coverage obligations under the terms of the Catlin Policy is effectively a disclaimer of coverage under the terms of that policy as well.

7. XL Specialty's disclaimer of coverage for the Covered Costs is wrongful under the terms of both Policies and controlling law and was not in good faith.

8. The Insured seeks a declaration from the Court that XL Specialty is required to indemnify them, under the terms of the XL Specialty Policy and/or the Catlin Policy, for the Covered Costs up to the full available limits of the XL Specialty Policy.

9. The Insured further seeks actual and compensatory damages for breach of contract against XL Specialty for its refusal to honor its contractual obligations to indemnify the Insured for the Covered Costs under the terms of the Policies.  Moreover, because such refusal was not in good faith, the Insured further seeks an award of additional damages pursuant to Tennessee Code Ann. § 56-7-105 as well as punitive damages.

## THE PARTIES

10. Plaintiff B. Riley Wealth Management, Inc., is the successor in interest to WSI, a corporation organized under the laws of the State of Tennessee with its principal place of business

in Memphis, Tennessee.  In July 2018, WSI formally changed its name to B. Riley Wealth Management, Inc.

11. Upon information and belief, Defendant XL Specialty is a corporation organized under the laws of the State of Delaware with its principal place of business in Connecticut, and is authorized to transact, and does transact, business within the State of Tennessee.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

13. This Court has personal jurisdiction over XL Specialty because XL Specialty has submitted to jurisdiction in this State by transacting business in Tennessee, including without limitation selling and delivering the XL Specialty Policy to WSI in Tennessee, as well as selling insurance policies to other policyholders located in Tennessee.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Insured's claims in this action occurred in Memphis, Tennessee.

## FACTUAL ALLEGATIONS

**I.    The Policies**

    **A.    The XL Specialty Policy**

15. XL Specialty issued the XL Specialty Policy to WSI in Memphis, Tennessee, for the period March 29, 2017 to March 29, 2018.  Upon information and belief, a run-off endorsement was added to the XL Specialty Policy after it was issued that extended the applicable claims reporting period of the XL Specialty Policy through July 23, 2023.  The XL Specialty Policy is subject to a $3,000,000 limit of liability.

16. The Insured and Wunderlich are expressly covered under the terms of the XL Specialty Policy because WSI is the "Named Insured" and Wunderlich is an "Insured Person," as those terms are defined in the XL Specialty Policy.

17. The XL Specialty Policy includes, among other coverages, an Investment Advisers Management Liability Coverage Part (the "D&O Coverage Part"). The D&O Coverage Part provides broad coverage to the Insured for, among other things, "Loss" resulting from "Claims" first made against the Insured during the "Policy Period" for "Wrongful Acts," as those terms are defined in the XL Specialty Policy.

### B. The Catlin Policy

18. Catlin issued the Catlin Policy to Wunderlich Investment Company, Inc. ("WIC"), WSI's parent company, in Memphis, Tennessee for the period August 1, 2014 to March 29, 2016.

19. The Insured is expressly covered under the terms of the Catlin Policy because it is a "Subsidiary," as that term is defined in the Catlin Policy, of WIC.

20. The Catlin Policy affords broad D&O liability coverage to the Insured for, among other things, "Loss" resulting from a "Claim" or a "Securities Claim" first made against the Insured during the "Policy Period" for "Wrongful Acts," as those terms are defined in the Catlin Policy.

## II. The Dominick Claims

21. On or about July 24, 2017, the Underlying Claimants initiated the Arbitration by filing a Statement of Claim (the "SOC") against WSI and WIC, seeking binding arbitration of the Dominick Claims. The SOC later was amended to drop WIC as a respondent and add Wunderlich as a respondent.

22. The SOC, both in its original form and as amended, includes five counts alleging common law fraud, negligent misrepresentation, violation of the Securities Exchange Act of 1934

and related regulations, breach of contract, and violation of certain FINRA rules. All of the counts in the SOC allege that Underlying Claimants suffered "damages" or "losses" as a result of actions taken by the Insured and Wunderlich in connection with the Transaction. None of the counts in the SOC seeks disgorgement or restitution of gains allegedly received by the Insured in connection with the Transaction. The SOC seeks money damages, interest, attorney's fees and costs, punitive damages, and other relief. A copy of the amended SOC is attached hereto at **Exhibit E**.

23. The Insured and Wunderlich vigorously defended the Dominick Claims in the Arbitration, which, after several years, ultimately culminated in a series of arbitration hearings.

24. On or about April 6, 2020, FINRA issued the Arbitration Award. Pursuant to the Arbitration Award, the Insured and Wunderlich were held jointly and severally liable for: (i) "compensatory damages" to Dominick in the amount of $7,000,000, (ii) "compensatory damages" to Campbell in the amount of $500,000, (iii) interest to Dominick in the amount of $2,824,590, (iv) interest to Campbell in the amount of $201,756, and (v) $2,500 in FINRA filing fees. In addition, WSI was held individually liable to both of the Underlying Claimants for $65,020 in costs and $818,778 in attorney's fees. Punitive damages were expressly denied in the Arbitration Award.

25. On or about June 3, 2020, the Insured, Wunderlich, and the Underlying Claimants entered into the Settlement Agreement to fully resolve the Dominick Claims. In light of the amounts awarded to the Underlying Claimants in the Arbitration Award, WSI agreed to make the Settlement Payment pursuant to the terms of the Settlement Agreement.

26. Pursuant to Section 3 of the Settlement Agreement, Campbell formally agreed to withdraw his claims in the Arbitration, and the amounts awarded to him in the Arbitration were vacated. Thus, none of the Dominick Claims settled pursuant to the Settlement Agreement

represented claims by Campbell, and none of the Settlement Payment represented amounts paid to Campbell.

### III.   XL Specialty's Improper Disclaimers of Coverage

27.   On or about July 31, 2017, shortly after receiving the SOC, the Insured tendered the Dominick Claims to XL Specialty for coverage, including defense and indemnity.

28.   By letters dated October 12, 2017, March 29, 2018, and May 29, 2020 (the "Coverage Disclaimer Letters"), XL Specialty disclaimed any obligation to provide coverage for the Dominick Claims or the associated Covered Costs (including Defense Costs) under the XL Specialty Policy on the basis of Exclusion III.F. of the D&O Coverage Part—the so-called "Insured Versus Insured Exclusion" ("Exclusion F").

29.   In pertinent part, Exclusion F purports to preclude coverage for "Loss in connection with any Claim made against an Insured . . . brought by, or on behalf of, or at the direction of any Insured . . .." The Coverage Disclaimer Letters asserted that, following the Transaction, Campbell, one of the Underlying Claimants, became a director of WSI.  In that capacity, XL Specialty contended, Campbell became an "Insured Person" as defined in the XL Specialty Policy, and therefore Exclusion F precludes coverage for claims by both Campbell and Dominick.

30.   This assertion is incorrect on its face because the inclusion of Campbell in the Dominick Claims only precludes coverage for Campbell's claims, not Dominick's claims.  By asserting this facially invalid basis for disclaiming coverage, XL Specialty knowingly, intentionally and wrongfully seeks to deprive the Insured of the benefit of the XL Specialty Policy to its own financial benefit.

31.   By letter dated April 30, 2020 (the "April 30 Letter"), counsel for WSI challenged XL Specialty's disclaimers of coverage for the Dominick Claims based on Exclusion F.  Among

other things, the April 30 Letter cites and discusses on-point caselaw from numerous jurisdictions demonstrating that, for purposes of "Insured Versus Insured" exclusions similar to Exclusion F, inclusion of an individual insured person (such as Campbell) as a claimant in a lawsuit against other insureds precludes coverage only as to claims asserted by the individual insured person, and does not preclude claims by non-insured claimants (such as Dominick).

32. Notwithstanding WSI's efforts, XL Specialty has continued to stand on its wrongful denial of coverage based on Exclusion F.

33. In addition, in its May 19, 2020 Coverage Disclaimer Letter, XL Specialty further disclaimed coverage—for the first time—based on: (i) Exclusion A of the D&O Coverage Part (as amended by Endorsement 2 to the XL Specialty Policy); and (ii) the assertion that the relief sought in the Dominick Claims is limited to uninsurable disgorgement or restitution, and therefore is excluded from the definition of covered "Loss" in the XL Specialty Policy.

34. The Coverage Disclaimer Letters further purport to reserve XL Specialty's right to deny coverage for the Dominick Claims based on various other provisions of the XL Specialty Policy.

35. The factual and legal bases of XL Specialty's disclaimers of coverage and reservations of rights as set forth in the Coverage Disclaimer Letters are entirely without merit. They are asserted by XL Specialty for the improper purpose of evading its coverage obligations for the Dominick Claims, which are fully covered by the XL Specialty Policy, at the Insured's expense.

**IV.    XL Specialty Fails, In Bad Faith, To Address Coverage Under the Catlin Policy**

36. In its Coverage Disclaimer Letters, XL Specialty specifically acknowledges the Liberalization Endorsement and the possibility that the Catlin Policy provides more favorable

terms of coverage for the Insured than the XL Specialty Policy. Nevertheless, XL Specialty fails to provide any analysis of coverage for the Dominick Claims under the terms of the Catlin Policy.

37. At least with respect to certain provisions of the Catlin Policy, this failure may have substantial implications for coverage of the Dominick Claims. By way of example, the Catlin Policy—unlike the XL Specialty Policy—expressly carves out from its Insured Versus Insured exclusion claims brought by "an Employee of the Company." Immediately following the Transaction, Campbell became an "Employee" (as defined in the Catlin Policy) of WSI (*i.e.*, the "Company), serving as a "Senior Advisor" to WSI pursuant to a written "Employment Agreement" between Campbell and WSI.

38. As such, the Insured Versus Insured exclusion in the Catlin Policy, on its face, has even less potential application to the Dominick Claims than Exclusion F in the XL Specialty Policy because the claims of Campbell—an "Employee" of WSI—are expressly carved out of the Dominick Claims, leaving only the claims of Dominick, a non-insured. Accordingly, XL Specialty's disclaimers of coverage based on the Insured Versus Insured exclusion, which was legally unsound under Exclusion F in the XL Specialty Policy, has no basis whatsoever under the terms of the Catlin Policy.

39. In order to disclaim coverage for the Dominick Claims in good faith, XL Specialty was required, at the very least, to base its disclaimer on available policy language most favorable to the Insured. In failing to analyze coverage under the terms of the Catlin Policy (including without limitation the Insured Versus Insured exclusion in the Catlin Policy) in any of its Coverage Disclaimer Letters despite acknowledging that the Catlin Policy may provide more favorable terms of coverage, XL Specialty knowingly and intentionally sought to mislead the Insured regarding coverage available for those claims, and thereby to wrongfully deprive the Insured of the benefits

of such coverage.  Such actions were taken by XL Specialty in bad faith.

## COUNT I
## DECLARATORY JUDGMENT

40. The Insured re-alleges and incorporates by reference the allegations of Paragraphs 1 through 39.

41. The Policies are binding contracts of insurance.

42. The Insured is insured under, or is otherwise entitled to the benefits of, the Policies by virtue of being the "Named Insured," or a "Subsidiary" of the Named Insured, as those terms are defined in the Policies.

43. The Dominick Claims constitute a "Claim" as defined by the XL Specialty Policy, which XL Specialty has conceded in writing.  The Dominick Claims allege one or more "Wrongful Acts" by the Insured as defined in the XL Specialty Policy, which XL Specialty has conceded in writing.  The Dominick Claims were first asserted against the Insured and Wunderlich during the "Policy Period" as that term is defined in the XL Specialty Policy, which XL Specialty has conceded in writing.  The Covered Costs all constitute covered "Loss," as that term is defined in the XL Specialty Policy.

44. No exclusions in the XL Specialty Policy, including without limitation Exclusion F, preclude or limit coverage available to the Insured for the Dominick Claims or the Covered Costs.

45. The Dominick Claims constitute both a "Claim" and a "Securities Claim" as defined by the Catlin Policy.  The Dominick Claims allege one or more "Wrongful Acts" by the Insured as defined in the Catlin Policy.  The Covered Costs all constitute covered "Loss," as that term is defined in the Catlin Policy.

46. No exclusions in the Catlin Policy, including without limitation the "Insured Versus

Insured" exclusion, preclude or limit coverage available to the Insured for the Dominick Claims or the Covered Costs.

47. The Insured has complied with all applicable provisions of the XL Specialty Policy, including all applicable conditions of coverage, and has paid all premiums due and owing in connection with the XL Specialty Policy.

48. XL Specialty has wrongfully denied, and/or wrongfully purported to reserve its right to deny, its contractual obligations to indemnify the Insured for the Covered Costs under the terms of the XL Specialty Policy. In so doing, XL Specialty also has wrongfully failed, contrary to the Liberalization Endorsement in the XL Specialty Policy, to consider the terms of the Catlin Policy in evaluating coverage for the Dominick Claims and the Covered Costs, despite expressly acknowledging that the Catlin Policy may provide more favorable terms of coverage. As such, an actual case or controversy exists between the Insured and XL Specialty regarding the extent of XL Specialty's coverage obligations under the Policies.

49. The Insured has made the Settlement Payment to the Underlying Claimants in connection with the Dominick Claims. Such payment was reasonably necessary to resolve the Insured's actual or potential liability to the Underlying Claimants as reflected in the Arbitration Award. The Insured also has incurred substantial Defense Costs in defending the Dominick Claims.

50. Pursuant to 28 U.S.C. § 2201, the Insured seeks a declaration from the Court that XL Specialty is obligated under the terms of both Policies to indemnify it for all of the Covered Costs, including without limitation the Settlement Payment and all of the Defense Costs, up to the full available limits of the XL Specialty Policy.

## COUNT II
### BREACH OF CONTRACT

51. The Insured re-alleges and incorporates by reference the allegations of Paragraphs 1 through 50.

52. The Policies are binding contracts of insurance.

53. The Insured is insured under, or are otherwise entitled to the benefits of, the Policies by virtue of being the "Named Insured" or a "Subsidiary" of the Named Insured, as those terms are defined in the Policies.

54. The Dominick Claims constitute a "Claim" as defined by the XL Specialty Policy, which XL Specialty has conceded in writing. The Dominick Claims allege one or more "Wrongful Acts" by the Insured as defined in the XL Specialty Policy, which XL Specialty has conceded in writing. The Dominick Claims were first asserted against the Insured during the "Policy Period" as that term is defined in the XL Specialty Policy, which XL Specialty has conceded in writing. The Covered Costs all constitute covered "Loss," as that term is defined in the XL Specialty Policy.

55. No exclusions in the XL Specialty Policy, including without limitation Exclusion F, preclude or limit coverage available to the Insured for the Dominick Claims or the Covered Costs.

56. The Dominick Claims constitute both a "Claim" and a "Securities Claim" as defined by the Catlin Policy. The Dominick Claims allege one or more "Wrongful Acts" by the Insured as defined in the Catlin Policy. The Covered Costs all constitute covered "Loss," as that term is defined in the Catlin Policy.

57. No exclusions in the Catlin Policy, including without limitation the "Insured Versus Insured" exclusion, preclude or limit coverage available to the Insured for the Dominick Claims or the Covered Costs.

58. The Insured has complied with all applicable provisions of the XL Specialty Policy, including all applicable conditions of coverage, and has paid all premiums due and owing in connection with the XL Specialty Policy.

59. The Insured has made the Settlement Payment to the Underlying Claimants in connection with the Dominick Claims. Such payment was reasonably necessary to resolve the Insured's actual or potential liability to the Underlying Claimants as reflected in the Arbitration Award. The Insured also has incurred substantial Defense Costs in defending the Dominick Claims.

60. XL Specialty has refused or otherwise failed to perform, in whole or in part, its contractual obligations under the Policies to indemnify the Insured with respect to the Covered Costs, including without limitation the Settlement Payment and the Defense Costs. This refusal or failure constitutes a breach of the terms of the XL Specialty Policy.

61. As a proximate result of such breach, and the necessity of having to file this lawsuit for damages, the Insured has suffered and continues to suffer damages.

62. In addition, at least certain of XL Specialty's breaches of the XL Specialty Policy were intentional, fraudulent, and/or reckless, and therefore were in bad faith. Such bad faith breaches include, without limitation, knowingly and intentionally failing to analyze coverage available for the Dominick Claims and the Covered Costs under the terms of the Catlin Policy, despite having acknowledged expressly that the Catlin Policy may provide more favorable terms of coverage to the Insured than the XL Specialty Policy. In so doing, XL Specialty recognized that the Catlin Policy is subject (in one or more meaningful respects) to terms of coverage more favorable to the Insured than the XL Specialty Policy, yet it nevertheless knowingly and intentionally sought to mislead the Insured into believing, in its numerous Coverage Disclaimer

Letters, that the terms of coverage applicable to the Dominick Claims were less favorable to the Insured than they actually are.

63. As a result of XL Specialty's intentional, fraudulent, and/or reckless actions described in the preceding paragraph, the Insured is entitled to an award of punitive damages.

## COUNT III
## VIOLATION OF TENNESSEE CODE ANN. § 56-7-105

64. The Insured re-alleges and incorporates by reference the allegations of Paragraphs 1 through 63.

65. Tennessee Code Ann. § 56-7-105 imposes additional liability upon an insurer that refuses to pay a tendered loss within sixty (60) days after demand for payment has been made by the policyholder where the insurer's refusal to pay was not in good faith and inflicted additional expense or loss, including without limitation attorneys' fees, upon the policyholder.

66. The Insured tendered the SOC to XL Specialty for coverage on or about July 31, 2017. This tender triggered XL Specialty's duty to indemnify the Insured for its Defense Costs, which began to be incurred at or near the time the Insured tendered the SOC to XL Specialty. Since that time, XL Specialty has consistently refused, and continues to refuse, to indemnify the Insured for its Defense Costs. Such refusal exceeds sixty (60) days.

67. The Arbitration Award was rendered against the Insured and Wunderlich on or about April 6, 2020. The Insured tendered the Arbitration Award to XL Specialty for indemnification on or about April 20, 2020. Since that time, XL has consistently refused, and continues to refuse, to indemnify the Insured for the amounts awarded to the Underlying Claimants in the Arbitration Award. Such refusal exceeds sixty (60) days.

68. The Settlement Agreement was entered into on or about June 3, 2020. XL has

consistently refused, and continues to refuse, to indemnify the Insured for the Settlement Payment required by the terms of the Settlement Agreement. Such refusal exceeds sixty (60) days.

69. XL Specialty's ongoing refusal to indemnify the Insured for the Covered Costs, including without limitation the Settlement Payment and Defense Costs, was not and is not in good faith. Among other reasons, such refusal constitutes, or is based upon, XL Specialty's knowing and intentional:

- Violation of its broad defense obligations under Tennessee law with respect to the Dominick Claims;

- Violation of its duty of good faith and fair dealing by relying on unsound legal positions in disclaiming coverage for the Dominick Claims; and

- Failure to a conduct a good faith investigation and determination of coverage in connection with the Dominick Claims under the terms of the Catlin Policy, despite having acknowledged expressly that the Catlin Policy may provide more favorable terms of coverage to the Insured than the XL Specialty Policy.

70. As a result of XL Specialty's bad faith claim handling and refusal to indemnify the Insured for the Covered Costs, the Insured has incurred additional loss or expense that it would not have incurred if XL Specialty had honored its coverage obligations in good faith, including without limitation: (i) attorneys' fees and related costs incurred in disputing the improper factual and legal bases of XL Specialty's refusal to honor its coverage obligations; and (ii) attorney's fees and related costs incurred in pursuing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, the Insured respectfully prays that this Honorable Court:

1) Enter a declaration of judgment against XL Specialty that, under the terms of the Policies, XL Specialty is obligated to indemnify the Insured for all of the Covered Costs up to the full available limits of the XL Specialty Policy;

2) Enter judgment against XL Specialty that it has breached, and continues to be in

       breach, of the terms of the Policies;

3)     Enter judgment against XL Specialty that, in breaching the terms of the Policies, XL Specialty has acted intentionally, fraudulently, and/or recklessly;

4)     Enter judgment against XL Specialty that, as a result of its bad faith conduct in handling the Insured's demands for coverage of the Dominick Claims, it is liable to the Insured for additional damages pursuant to Tenn. Code Ann. § 56-7-105; and

5)     Award monetary damages and other relief to the Insured, with the specific amount to be determined at trial, as follows:

    a. The full amount of the Covered Costs as actual or compensatory damages, subject only to the full available limits of the XL Specialty Policy ("Policy Limits");

    b. Any other actual or compensatory damages incurred by the Insured, subject only to Policy Limits;

    c. Twenty-five percent of the combined amount of items a. and b., in addition to items a. and b. and Policy Limits, pursuant to Tenn. Code Ann. § 56-7-105;

    d. Punitive damages, in addition to Policy Limits;

    e. Prejudgment and post-judgment interest as provided by law, in addition to Policy Limits;

    f. Attorneys' fees and costs of this action, in addition to Policy Limits; and

    g. Any and all additional relief in favor of the Insured deemed appropriate by this Honorable Court.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Insured hereby demands that all claims in this action be tried to a jury.

DATED: August 14, 2020

        Respectfully submitted,

        /s/ **Mark D. Griffin**
        Mark D. Griffin (TBPR 17381)
        Pete A. Brunson (TBPR 37109)
        **Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
        165 Madison Avenue, Suite 2000
        Memphis, Tennessee 38103
        Tel.: (901) 577-2221
        Fax: (901) 577-0870
        mgriffin@bakerdonelson.com
        pbrunson@bakerdonelson.com

        **Haynes & Boone, LLC**
        Stephen T. Raptis (*pro hac vice* admission pending)
        800 17th Street, NW, Suite 500
        Washington, DC  20006-3962
        Tel.: (202) 654-4563
        steve.raptis@haynesboone.com

        *Attorneys for Plaintiff B. Riley Wealth Management, Inc., f/k/a Wunderlich Securities, Inc.*